Kirkpatrick, C. J.
The declaration in this case, as it is seen, charges the defendant with having, on the 15th of March, 1806, and at divers other days and times, between that day and the 15th of December, in the same year, debauched Elizabeth Moffitt, the plaintiff’s daughter and servant, per quod, ifc.
The testimony is, that an illicit intercourse between the defendant, and the said Elizabeth, took place in March, 1806, in the life time of the father of said Elizabeth, and while she lived in bis bouse: that she was, during that time, debauched and got with child by the said defendant; but that no such intercourse existed between them after the death of her said father.
The first question is, whether the mother can, now that the father is dead, maintain an action for this injury: — And I am of opinion she cannot.
In the case of Postlethwaite, v. Sparks, in 3 Bur. 1878, the facts were these.—
The daughter of Postlethwaite, the plaintiff, being- twenty three years of age, hired herself to one Saul, as a servant. During her service, she was debauched, and got with child by the defendant, Parkes; and becoming unable to perforar; her duties, Saul, her master, [*] paid her her wages, and discharged her. The plaintiff, her father, received her when no one else would, and boarded and lodged her in his house. He also provided for her, and maintained her in her lying in, at *438 his own proper expense; and yet it was Iiolden that the action would not lie.
And the reason why it would not lie, is, not because the daughter was above the age of twenty-one years, as a late writer has supposed, (for it was agreed on all hands that that makes no difference) but because the daughter, at the time she was debauched and gotten with child, was not the servant of the father, but of another person.
Ever since this case, I take it to be perfectly well settled that this action will not lie, unless the daughter he proved, in some way or another, to have been, at the time of the seduction, the servant of the plaintiff.
For debauching the daughter, simply, an action will not lie by the father; but if there be loss of service consequent thereupon, then the action will lie; and hence the loss of service has been called the gist of the action; so that in all these cases, the daughter must also be the servant of the plaintiff, at the time of the injury done. It is true, that the very slightest evidence of service, lias been thought to be sufficient, as the milking of cows, &c. And indeed, the law will sometimes raise up a constructive service, as in consideration of maintenance, &c. But here there is no such evidence, no circumstance from which such constructive service can be raised; Nay, the very contrary is stated on the face of the record. Elizabeth Moffitt, the daughter, was at the time of the seduction, the servant of the father, living inhis house, occupied in his business: he is now dead, and the mother brings this action.
In the case cited from Burrow, the father was obliged to receive the daughter into his house, and [*] not only sustained the loss of her service, while lie maintained her there, but also was put to great charge and expense in her lying in; but because she was not his servant at the time of the seduction, no action would lie.
So in the case before us; the daughter, at the time of the seduction, was living in the house of her father, and occupied in his service. After his death, the mother brings this action, endeavoring to connect the original injury, done in the life time of the father, with the special damage arising to herself, after his death, and so by putting the two together, to make out a causeof action. She has been illy advised; the action will not lie; she ought to have been non suited.
I am well aware, that actions of this kind have been highly favored in courts of justice; that they have been made merely the form of getting at the violatoi’s of female chastity and honor ; that the loss of service laid in the declai-ation, is by no means the measure of damages, but that that being once *439 proved, all oilier circumstances which can aggravate the transaction, arc subjected to the consideration of the jury, in order that compensation may be made, as far as money can be a compensation, for the lost reputation of the daughter, for the wounded feelings of the parents, for the tarnished honor of the family: — Yet, still this does not alter the thing. A lawful cause of action must he made out in evidence in the first place; and in order to make this out, it is necessary that the daughter, at the time of her being debauched, should have been the servant of the party who brings the suit. The injury done while she was the servant of one, and the damage resulting therefrom after she became the servant of another, cannot be connected together.
Having said this much on the matter contained in the bill of exceptions taken to the opinion of the court [*] below, in refusing to non suit the plaintiff I forbear to animadvert upon the charge to the jury. This, besides that it goes upon the principle above investigated, contains other matter altogether inadmissible, but which it would be unprofitable to make the subject of argument in deciding this case. In my opinion, the judgment must be reversed.
Rossell, J.
It is universally admitted, that a parent cannot maintain an action for the seduction and getting with child his daughter, though attended with the most aggravated circumstances and poignant distress. But courts, to give a remedy for so great an injury, have permitted parents, in such situations, to bring actions for the actual loss of service of a child so seduced, and the expenses they have been put to in maintaining them. This action has undergone a variety of modifications, since its first introduction into courts of law, unnecessary to trace on the present occasion. But I consider the rule is now settled, that if a daughter, let her age be what it may, living with, and under the control of a parent, is begotten with child, such parent may maintain an action against the seducer, for the loss of service, and expenses he may he put to, in consequence of such getting with child; and juries, according to the circumstances of the case, are more or less liberal, in a verdict for damages.
In the present case, the daughter was seduced in the life time of the father, but no loss of service happened in his life time, nor was lie put to any expense on that account. He then could not have maintained an action. On his death, every parental right, and every parental duty, immediately devolved on the mother; she justly claimed all the benefit of her daughter’s services, and was, if able, obliged to maintain her. She actually suffered all the loss of service, and *440 Ithe expenses of lying in, and she only can sustain an action to recover the damages. It does not appear [*.] to me, that s it alters the. case, that the daughter was seduced in the life . time of the father, for that he conid not have brought an ; action: it must be for the loss of services and expenses, real Í and personal injuries, arising from the act. The wound . given to the reputation of the family, is as deeply fixed in the bosom of a mother, as in that of á father; the loss of servicé and expense are equal, and the obligation to support, as strong ; deprive her of the right of action, and a great personal wrong will subsist in society, without a remedy, and thus a fundamental principle of our law be violated, and injustice be made to triumph. The case in 3 Burrow, I do iiot think strictly analagous, and should not, for that reason, rule this; the court there gave no decisive opinion. I however, think with my brethren, that the charge of the judge Of Somerset,-Went much too far, and might have had an improper influence on the jury; and that the judgment bught to be set. aside.
Pennington, J.
As my brothers do not agree; and the Case is important in point of principle, and attended with some difficulty, I shall give my opinion at considerable length.
The questions in controversy in this cause, arise on A record .brought up- by writ of error, from the Somerset Common Pleas. The action below, was an action brought by the mother, for assaulting her daughter, and getting her with child, per quod servitium amisit. The facts, as they áre disclosed by the first bill of exception, arc, that in September or October, 1805, the defendant began to pay his addresses, by way of courtship, to the daughter, at her fathers house, lie being then living. That he continued his visits, and in March following, seduced her, and got her With child,ánd still continued his visits. - That in the latter part of the summer following, the father died, on which the defendant discontinued .his visits. The daughter continued to live with her mother, from the [*] death of her father, till the trial. The mother was at the expense of her lying in. .
It is contended by the defendant below,; the plaiiitiff hi error, that the mother cannot maintain this action, as the assault and getting’ with child, was done during the life time bf the father. This is the first question for us to decide. If the mother cannot maintain this action, it is evident that no one else can. The father is dead; and the' right of action, if he líád any; died with him, and does not survive to his representatives. If therefore, the mother cannot maintain this action, there is evidently a wrong without a right; an *441 injury without a remedy; and although this circumstance ought not to have a decisive influence on the question, yet it should excite a thorough investigation of it. If the injury complained of, is a suitable subject to be redressed through the medium of courts of law, it is much to be lamented, that a specific action is not given for the injury, and that courts of law have been compelled to contrive a collateral, in lieu of a direct remedy. This however, has been done, by considering the parent in the place of a master, and the daughter in that of a servant, and then sustaining an action brought by the parent, as master, for the injury done to his servant, whereby he lost her services, per quod servitinm amisit; at first, it was usual to charge the breaking and entering the father’s house, and assaulting the daughter, and getting her with child, per quod, &c. in which case, the breaking and entering the father’s house, constituted the technical ground of the action, and the seducing, and getting the daughter with child, and loss of service resulting therefrom, was laid by way of aggravation inter alia enormia; but the more modern practice has been, to deavc out the breaking and entering the house, in which case, the loss of service, I apprehend, forms the ground of the action, and is the grievance complained of; and this has been done in the case under consideration; but as the assaulting the daughter [#] is at least inducement to the principal charge, a difficulty arises, from this having been done at a time when the daughter cannot, with legal propriety, be said to be in the service of the mother, the plaintiff below, the father, then being the head of the family. And we are asked this question; suppose a person in the service of A. should be beat and wounded, and afterwards, by a new contract, should go into the service of B. and then, by reason of the wounds received, while in the service of A. should be unable to perform the stipulated service; couldB. in that case, maintain an action for this loss of service? — I apprehend not; the loss of service was voluntary on the part of B. But as this is not precisely the case under consideration, I will state another, bearing a nearer resemblance to it. Supposing a person should be bound a servant to A. for a month, and by the same indenture, also be bound to serve B. for a certain time, immediately succeeding the expiration of the service to A. and should be beat and wounded at the last hour of the expiration of the service to A. by which he would not be able to perform the service due to B. could B. maintain an action for this loss of service? I can perceive no reason why B. should not maintain this action, though I know of no adjudicated case to justify it. If he could not, he would receive a serious injury *442 from an unlawful act, without remedy. I apprehend that it is not the smart and beating suffered by the servant, that gives the master the action, for this is an injury done to the servant, and for which he himself has an action ; but it is the service that the master is deprived of, in consequence of the unlawful act of beating and wounding, that constitutes the ground, of the injury done to him. Indeed, for this injury, both the servant and the master has an action. The servant for the battery, and the master for the loss of service, 4 Bac. 594, (Gw’s Ed.) In Cro. Jac. 619, the court say, thatthe point of theaction is, the loss of service. Thefirstcausethatlhave been able to find in the books [*],brought by the father, for the seduction of, the daughter, is mat of Norton v. Jason,in 1653; Styles, 398. This was an action for breaking and entering the plaintiff’s house, assaulting his daughter, and getting her with child, per quod servitkm amisit, it having been brought after the expiration of four years; the question was, whether it was not an action of trespass, and so barred by the statute of limitations. It was contended by the plaintiff’s counsel, that this was merely an action on the case, by the father, for the loss of service, and therefore not barred. On the first argument, S.oix, C. J. said, “this is an action brought for the damage done to the master, and the servant will release the battery, yet the master may have an action for the damage caused to him by the battery. And although the daughter cannot have an action, yet the father may, although not for- entering his house, because it was with his leave; nor for assaulting his daughter and getting her with child, because this is a wrong particularly done to her: yet for the loss of service caused by this, he may .have an action.” On the second argument he said, that the vi et armis was the inducement to the action, and the loss of service was the ground of the action. But Male being of opinion, that the damages referred to the trespass, for entering the house, as well as the loss of service, and being entire, was bad; Boll, on reading the record, acquiesced, There can be no doubt but that Male was right: but I cite this case, to show the understanding of the court, as to the ground of'the action in the origin of this remedy. In conformity to the opinion of Roll, it was expressly adjudged by the Supreme Court of the State of New-York, in the. case of Ackerly v. Haines, 2 N. York Term Rep. 292, that the loss of service, and the expenses of the daughter’s confinement, was the ground of the action, and the court supported the charge of the judge at the Circuit; that although they might believe from the evidence, in tho previous want of chastity in the daughter, yet tho father could main *443 tain the [*] action for the loss of service, and the expenses of her confinement in lying in. In the case before us, the daughter was under age, and her services cast upon the mother by the act of law, while she lived with her: 1 Blac. Com. 453. Holt, Chief Justice, in the case of Russell v. Corne, 2 Lord Ray: 1032, says, that a man cannot maintain an action against another, for assaulting his daughter, and getting her with child; but that for assaulting his daughter, and getting her with child, per quod servitium amisit, with the addition of breaking and entering his house, he may. The modern cases show that the breaking and entering the house makes ño difference; the lose of service must, therefore, he the ground of the action. One of the judges in Mr TJios. Ray. 260, going over the case of Norton t>. Jason, before cited from Styles, recognized this distinction. He says, that it was resolved in that case, that "the father could not maintain an action for the assault of his daughter, hut only by reason of the loss of service.” All this corroborates the- principle laid down by Roll, that the assault and getting with child, is only inducement to th eaction} but the ground of action is the loss of service.” The case of Postlethwaite v. Parkcs, ’ was an action of trespass, not case; besides, the daughter was of full age, and in the service of another: in fact, she was emancipated; the father lost all control over hernor had he any interest in her service, but what he acquired after the injury done, by voluntarily taking her to his house. In the case of Dean v. Peel, 5 East. 45, (to which the Chart has been referred by the counsel for the plaintiff in error) the ground of the decision of the court was the want of intention in the daughter to return to her father’s house, having left it with an intention never to return. In this case was cited a case tried at the Lancaster Assizes, before Mr.¡J«slice Wilson, of Johnson v. Me Adam, where the daughter/ without the knowledge of the father, hut by the consent of an [*] Aunt, who lived in the family, went by invitation* to live with a lady three or lour months, in the absence of her husband, to keep her company. While there, she became of age 5 after which, and while residing with the lady, she w as seduced and got with child; and after which she ¡returned to her lather, anti continued with him. The learned judge sustained the action. This decision was approved of by Lord Ellouborough, who distinguished it from the case of Dean v. Feel; that in the latter there was no animus -rcoertendi. Neither of these cases arc of authority with us j hut are, however, worthy of respect, as the opinion of learned judges on the subject before uy. in the case of Dean v. Peel, the court went on *444 a subtle distinction, which I cannot bring my mind to approve. That of Johnson v. M‘Adam, appears to me, to go great lengths in support of the decision of the Common Pleas. In that case, the daughter was of full age, living in the house of a friend, as a companion to the mistress of the house. N.o services can be presumed. She was not in the service, or even house of the father at the time of the seduction and getting with child. No service was lost by the father at the time of the injury done. I apprehend that the condition of master was as far removed from the father at the time of the seduction, as that of mistress was from the mother in this case. The loss of service after her return to her father’s house, must have been the ground on which the action was sustained. After all, even if the relation of master and servant must exist at the time of the seduction - and getting with child, may we not, with a safe conscience, adopt the liberality of Lord Ellenborough, in his observations on the before mentioned case of Johnson v. M‘Adam, and say, that an implied relation of mistress and servant existed between the mother and the daughter, at the time of the seduction; that our law may not resemble a net with broken meshes, calculated to take some, and let others, with no better pretensions, [#] escape; and that substantial justice may indiscriminately be done to all? There cannot be a doubt, had the father lived, but that an action could have been maintained to redress the injuries sustained by this family. If it cannot, in the event that has happened, what must be the reflections of the unfortunate mother, when to the grievous calamity of the loss of a husband, she is to be told, that the law of her country has superadded another affliction, in affording protection and impunity to the vile seducer of her daughter’s chastity? On the whole, my mind is prepared to sustain the action.
There is, however, another decisive answer to the ground of error alledged under this bill of exception, which is, that it is bottomed on the court’s refusing to nonsuit the plaintiff. The court not being bound to nonsuit, I apprehend their refusing to do it, cannot be assigned as error.
The question brought up by the next bill of exception, is, Whether the Court of Common Pleas over-ruled legal testimony? It appears that the plaintiff below called a witness to prove the general good character of the daughter before the seduction: — That the counsel for the defendant put the following question to the witness: — What was the general character of the said Elizabeth among the young men, before her connexion with the defendant? On an objection to the question, the court over-ruled it. The character of the *445 daughter was certainly in issue. The defendant was at liberty to go into evidence to show it bad ; at least, anterior to the seduction; but this must be proved by legal evidence. This question arising on the cross-examination, must be considered as intended to rebut the testimony as to her general good character, given by the witness. The furthest that the defendant could legally go in this cross-examination, I apprehend, would have been, to ask the witness whether the daughter was esteemed by all persons [*] acquainted with her, chaste; or whether he had not heard ill opinions expressed of her as well as good; but he could not, as 1 conclude, go into particulars, either as to persons, or description of persons; especially that of young men, who often from vanity, and sometimes from worse motives, boast of favors they never received. I therefore, cannot perceive any error in over-ruling this question.
The third and last bill of exception, brings up for the consideration of this Court, the charge of the Court of Common Pleas to the jury. As to this, the court charged the jury, that in this action the plaintiff could only recover damages for the injury which she had sustained since the death of her husband, and since her right accrued to the service of her daughter. So far the plaintiff in error cannot have any reasonable or legal ground of complaint. But the charge continues as follows: “But if the daughter sustained a fair character before her connexion with the defendant, and he had seduced her, in consequence of which, she had become loose and abandoned in her conduct, and that the plaintiff had sustained any injury by the loss of reputation or otherwise, since the death of her husband, that it was competent for the jury to take such loss into their consideration, as the ground of the verdict they might find.”
I think that the opinion contained in this part of the charge, is not law. There is no doubt a material distinction between the formal technical part of the action to which the observations on the first objection principally apply, and the substantial injury intended to be redressed by these actions, which, as I apprehend, is to recompence the father for the injury done to his feelings by the wanton and lawless breach made upon the peace and happiness of his family, by the dishonorable and faithless conduct of the defendant. An opinion is also entertained, and as I apprehend, sanctioned by universal practice, that the jury [*] may take into their consideration a wrong done to the daughter, and remunerate her in damages for the injury done to her feelings and reputation, by the perfidious arts practised upon the weakness of her sex, under the seducive and insidious disguise of love *446 and affection. I am, however, clearly of opinion, that it cannot be carried so far as to give redress for any injury the parent may sustain by the loss of reputation, or otherwise caused by the loose and abandoned conduct of the daughter, after her connexion with the defendant; although that connexion may have led to it. This would he carrying the consequences beyond safe, natural, and reasonable limits; and further than the principles of our law will warrant. The defendant may, perhaps be prevented from setting this up as an excuse or palliation to the injury; but this is a different thing.
There is nothing in the evidence disclosed by the several bills of exception to which this jiart of the charge could apply. But as the whole of the evidence is not necessarily put into the bills of exception, some evidence of the kind may have been given, and the jury possibly misled by this part of the charge. For this reason, I am of opinion, that the judgment of the Common Pleas be reversed; and that a venire facias de novo issue. I have the less reluctance to this, that if the whole of the evidence is contained in the bills of exception, the jury have not assessed adequate damage. On the other hand, if the defendant below has a better cause than what appears by this record, he may have another chance with a jury of 1ns country.
Judgment reversed, and venire de novo awarded.